| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |   |
|---|---|---|
| JAMES GAUTHIER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | CIVIL ACTION NO. 1:23-CV-281 |
| | § | |
| GOODYEAR TIRE & RUBBER CO., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Goodyear Tire & Rubber Co.'s ("Goodyear") Motion for Summary Judgment (#40). Plaintiff James Gauthier ("Gauthier") filed a response in opposition, and Goodyear and Gauthier have filed a reply and sur-reply respectively. Having considered the pending motion, the submissions of the parties, the pleadings, the record, and the applicable law, the court is of the opinion that the motion should be granted.

I.  Background

On June 16, 2023, Gauthier filed suit in the 60th Judicial District Court of Jefferson County, Texas, alleging various causes of action against Goodyear, including retaliation, negligence, intentional infliction of emotional distress, a *Sabine Pilot* cause of action, and First Amendment retaliation. Goodyear removed the suit to this court and moved to dismiss all claims alleged against it (#8). Gauthier filed his First Amended Complaint (#11), retaining only his *Sabine Pilot* cause of action based on Goodyear's alleged retaliation against Gauthier for his refusal to commit an illegal act.

The events relevant to Gauthier's claims began on Saturday, June 12, 2021, when a reportable hydrocarbon leak occurred at the Goodyear plant in Beaumont, Texas. A reportable

event, like the hydrocarbon leak, must be reported to the Texas Commission on Environmental Quality ("TCEQ") "as soon as possible but not later than 24 hours after the discovery of the spill or discharge." 30 TEX. ADMIN. CODE § 327.3(b). Goodyear, however, did not report the leak until Tuesday, June 15, 2021. A copy of the report, attached as Exhibit B-4 to Goodyear's Motion for Summary Judgment, explains that on Saturday, June 12, 2021, at 4:40 a.m., "the capacitance probe on C-Decanter failed and released hydrocarbons to the wastewater treatment ditch . . . . The problem was identified at 12:35 p.m." The report is dated June 15, 2021, at 8:30 a.m.

At the time of the leak, Gauthier was working as a board operator along with Team Lead John Cooper ("Cooper") and outside operator Brian Bergeron ("Bergeron"). In his position as board operator, Gauthier was responsible for monitoring trends and equipment pressure, including checking to ensure that the machines were operating correctly and there were no chemical leaks. At approximately 6:30 a.m., the hydrocarbon alarm began to sound, but according to Gauthier's deposition testimony, neither Cooper nor Bergeron could locate or confirm a hydrocarbon leak outside. The alarm continued to sound intermittently throughout the morning, until approximately 11:00 a.m., when Gauthier discovered that a control valve on a decanter, which was located outside in a ditch, had opened to 100 percent. Gauthier testified that he reported the open valve to Cooper and called an Instrument and Electrician ("I&E") technician. The I&E technician, along with Cooper, worked to get the valve "under control" and told Gauthier that it was possible that hydrocarbons had been released into the ditch. Gauthier further stated in his deposition testimony that, at approximately 12:15 p.m. or 12:30 p.m., he and Cooper called the Site Shift Manager ("SSM"), Margarito Sonny Garcia ("Garcia"), to report the problem with a faulty valve. Gauthier also indicated that Garcia was informed that there was a hydrocarbon leak. Garcia, in

a sworn declaration, contended that on Saturday, June 12, 2021, he was "only informed of an issue with a valve and [he] was told that the [I&E] technician was working on the decanter." Garcia further averred that it was not until Monday, June 14, 2021, that he learned that there was a hydrocarbon leak in the ditch. According to Gauthier, around 3:00 p.m., on June 12, 2024, the presence of hydrocarbons was detected in the ditch, confirming a hydrocarbon leak. At approximately 3:52 p.m. that day, Gauthier submitted a work order for the hydrocarbon detector, indicating that the alarm was faulty, even though the hydrocarbon leak had already been confirmed prior to that time, suggesting that the alarm was functioning properly and had detected the leak at the outset.

On Monday, June 14, 2021, Gauthier's Unit Supervisor, Brittnee Witmire, contacted the Human Resources Department to initiate an investigation into the hydrocarbon leak. As part of the investigation, Gauthier was asked to provide a written statement, which he prepared that same day, Monday, June 14, 2021. As previously noted, while the Human Resource's investigation was ongoing, Goodyear reported the leak to the TCEQ on Tuesday, June 15, 2021, at 8:30 a.m.

There is conflicting testimony regarding whether Gauthier was later interviewed by Goodyear's Human Resources Representative, Shalyn Bevil ("Bevil"), on Tuesday, June 15, 2021, or Wednesday, June 16, 2021.[1] Construing the evidence in Gauthier's favor, he and Bevil met on Tuesday, June 15, 2021, in the afternoon. Specifically, in his deposition, Gauthier stated that he was asked to come in early to meet with Bevil on "Tuesday before [he] started shift on nights,"

---

[1] Gauthier testified that he met with Bevil on Tuesday afternoon. Yet, in her sworn declaration, Bevil stated that she met with Gauthier on Wednesday, June 16, 2021. Additionally, Bevil's handwritten notes from the interview include what appears to be Gauthier's signature with the date—"6/16/21." In his deposition, however, Gauthier claimed he had never seen Bevil's notes before and that he did not sign them.

and that he and Bevil met "that afternoon." Gauthier further testified that: "They called me that morning, some time that morning, I don't remember the time, and they asked me to be up at the plant two hours early which we normally made relief at 4:00. So, I believe I was there at 2:00. I may have gotten there at 1:30, 2:00 o'clock." According to Bevil's declaration, one of the reasons she interviewed Gauthier was because his "written statement did not appear to be accurate and did not match up with the physical evidence of the work orders or Mr. Cooper's or Mr. Bergeron's statements." Bevil stated that she "decided to give Mr. Gauthier a chance to explain his discrepancy and rectify any errors he may have made in his written statement." Gauthier declined to make any changes to his written statement.

Thereafter, on June 17, 2021, Goodyear terminated Gauthier's employment. In his Amended Complaint, Gauthier asserts that Goodyear asked him to alter the timeline of his written statement so that the company could avoid a violation for releasing hydrocarbons and failing to report and respond to the release in a timely manner. Gauthier contends that Goodyear terminated his employment for refusing to amend his report. Goodyear avers that Gauthier was terminated for failing to report the hydrocarbon leak in a timely manner and falsification of work orders.

II.    Analysis

   A.    Summary Judgment Standard

A party may move for summary judgment without regard to whether the movant is a claimant or a defending party. *See Union Pac. R.R. Co. v. Palestine*, 41 F.4th 696, 703 (5th Cir.), *cert. denied*, 143 S. Ct. 579 (2023); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 380 (5th Cir. 2019); *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall

be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Union Pac. R.R. Co.*, 41 F.4th at 703; *United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, 9 F.4th 328, 331 (5th Cir. 2021); *Smith v. Harris County*, 956 F.3d 311, 316 (5th Cir. 2020); *Parrish*, 917 F.3d at 378. The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022); *Goldring v. United States*, 15 F.4th 639, 644-45 (5th Cir. 2021); *Playa Vista Conroe v. Ins. Co. of the W.*, 989 F.3d 411, 416-17 (5th Cir. 2021); *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019). To warrant judgment in its favor, the movant "must establish beyond peradventure *all* of the essential elements of the claim or defense." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (quoting *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017)); *accord Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011).

"A fact issue is 'material' if its resolution could affect the outcome of the action." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) (quoting *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)); *see MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368; *Lexon Ins. Co., Inc. v. Fed. Deposit Ins. Corp.*, 7 F.4th 315, 321 (5th Cir. 2021); *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020). "Factual disputes that are irrelevant or unnecessary will not be counted." *Tiblier v. Dlabal*, 743

F.3d 1004, 1007 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *accord Valencia v. Davis*, 836 F. App'x 292, 296 (5th Cir. 2020); *see Dyer*, 964 F.3d at 379. "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Gerhart v. Barnes*, 724 F. App'x 316, 321 (5th Cir. 2018) (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)); *accord Johnson v. City of San Antonio*, No. 22-50196, 2023 WL 3019686, at *6 n.7 (5th Cir. Apr. 20, 2023); *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). Thus, "[a] genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368 (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)); *Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 309 (5th Cir. 2021); *Dyer*, 964 F.3d at 379; *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016). The moving party, however, "need not negate the elements of the nonmovant's case." *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014); *see Savoy v. Kroger Co.*, 848 F. App'x 158, 160 (5th Cir. 2021).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3; *see Beard v. Banks*, 548 U.S. 521, 529 (2006) (quoting FED. R. CIV. P. 56(e)); *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023); *MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368; *Acadian Diagnostic Lab'ys, L.L.C. v. Quality Toxicology, L.L.C.*, 965 F.3d 404,

410 (5th Cir. 2020). The court "should review the record as a whole." *Black v. Pan Am. Lab'ys, L.L.C.*, 646 F.3d 254, 273 (5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)); *see Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 234 (5th Cir. 2018); *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022); *Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021); *Lyons v. Katy Ind. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (quoting *Anderson*, 477 U.S. at 255); *Seigler*, 30 F.4th at 476; *Batyukova*, 994 F.3d at 724; *Lyons*, 964 F.3d at 302. The evidence is construed "in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)); *accord Lexon Ins. Co., Inc.*, 7 F.4th at 321; *Geovera Specialty Ins. Co. v. Odoms*, 836 F. App'x 197, 200 (5th Cir. 2020) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Furthermore, the court's obligation to draw reasonable inferences "does not extend so far as to allow a wholly 'unreasonable inference' or one which amounts to 'mere speculation and conjecture.'" *Mack v. Newton*, 737 F.2d 1343, 1351 (5th Cir. 1984) (quoting *Bridges v. Groendyke Transp., Inc.*, 553 F.2d 877, 879 (5th Cir. 1977)); *accord McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 432 (5th Cir. 2020); *Batyukova*, 994 F.3d at 724 ("'Conclusory

allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation' will not survive summary judgment." (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016))); *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 528 (5th Cir. 1999) ("If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." (quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468-69 (1992))); *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) ("[O]nly reasonable inferences in favor of the nonmoving party can be drawn from the evidence." (citing *Eastman Kodak Co.*, 504 U.S. at 468 n.14)). "[S]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Certain Underwriters at Lloyd's, London v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 256 (5th Cir. 2020) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)); *accord Allaudin v. Perry's Rests., Ltd.*, 805 F. App'x 297, 299 (5th Cir. 2020); *Acadian Diagnostic Lab'ys, L.L.C.*, 965 F.3d at 410 (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Lyons*, 964 F.3d at 302; *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 560 (5th Cir. 2019). "[W]here the non-moving party fails to establish 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' no genuine issue of material fact can exist." *Goode v. Greenstream Int'l, L.L.C.*, 751 F. App'x 518, 521 (5th Cir. 2018) (quoting

*Nichols v. Enterasys Networks, Inc.*, 595 F.3d 185, 188 (5th Cir. 2007)); *see Phillips v. Sanofi U.S. Servs. (In re Taxotere (Docetaxel) Prods. Liab. Litig.)*, 994 F.3d 704, 710 (5th Cir. 2021). In such a situation, "'[a] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of summary judgment' for the moving party." *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (quoting *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008)); *accord Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023); *Stingley v. Watson Quality Ford*, 836 F. App'x 286, 288 (5th Cir. 2020).

    B.    <u>At-Will Employment and Sabine Pilot</u>

In diversity cases, federal courts follow the choice of law rules of the forum state. *Nix v. Major League Baseball*, 62 F.4th 920, 932 (5th Cir.), *cert. denied*, 144 S. Ct. 165 (2023); *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 n.1 (5th Cir. 2020); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 771 (5th Cir. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). Because Texas is the forum state, the court will apply Texas law.

In Texas, it has long been established that, in the absence of a contractual or statutory restriction, an employment relationship is terminable at the will of either party, with or without cause. *See Heggemeier v. Caldwell County*, 826 F.3d 861, 870 (5th Cir. 2016); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010); *Amigo Broad., L.P. v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 481 (5th Cir. 2008); *Hillman v. Nueces County*, 579 S.W.3d 354, 358 (Tex. 2019); *County of Dallas v. Wiland*, 216 S.W.3d 344, 347 (Tex. 2007); *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998); *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733,

734 (Tex. 1985); *E. Line & R.R.R. Co. v. Scott*, 10 S.W. 99, 102 (Tex. 1888). "An 'employment-at-will' relationship is not binding upon either the employee or the employer. Either may terminate the relationship at any time." *Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830, 832-33 (Tex. 1991). As the Texas Supreme Court observed in *Wiland*: "For well over a century, the general rule in this State, as in most American jurisdictions, has been that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." 216 S.W.3d at 347 (quoting *Montgomery Cnty. Hosp. Dist.*, 965 S.W.2d at 502); *accord Gentilello*, 627 F.3d at 544; *Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993).

One "very narrow" exception exists which "covers only the discharge of an employee for the sole reason that the employee refused to perform an illegal act." *Sabine Pilot Serv., Inc.*, 687 S.W.2d at 735; *see Hillman*, 579 S.W.3d 354, 358; *City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000); *Tex Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995); *Herrera v. Resignato*, 621 S.W.3d 835, 841 (Tex. App.—El Paso 2021, no pet.). "Sabine Pilot is an extremely specific and narrow exception to the employment at will doctrine." *Physio GP, Inc. v. Naifeh*, 306 S.W.3d 886, 889 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *accord Sabine Pilot Serv., Inc.*, 687 S.W.2d at 735 (establishing the "very narrow" exception to the employment-at-will doctrine); *cf. Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 332 (Tex. 2006) (refusing to extend the Sabine Pilot exception to employees who are asked not to report a crime); *Winters v. Hous. Chron. Pub. Co.*, 795 S.W.2d 723, 724 (Tex. 1990) (declining to recognize a cause of action for private employees who report illegal activities except where the legislature has "enacted protection for a limited class of employees").

"To establish a wrongful termination claim, the plaintiff must prove that: '(1) [he] was required to commit an illegal act which carries criminal penalties; (2) [he] refused to engage in the illegality; (3) [he] was discharged; [and] (4) the sole reason for [his] discharge was [his] refusal to commit an unlawful act.'" *Karna v. BP Corp. N. Am.*, 609 F. App'x 814, 817 (5th Cir. 2015) (quoting *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003)); *see Hinds*, 904 S.W.2d at 633 ("An employer who discharges an employee both for refusing to perform an illegal act *and* for a legitimate reason or reasons cannot be liable for wrongful discharge."); *Sabine Pilot Serv., Inc.*, 687 S.W.2d at 735. "If there is no 'directive to violate the law,' then Sabine Pilot does not provide a remedy." *Sandberg v. STMicroelectronics, Inc.*, 600 S.W.3d 511, 523-25 (Tex. App.—Dallas 2020, no pet.) (holding that the plaintiff did not plead or present evidence that his employer "ever required him to sign false tax statements or other financial documents. Instead, the gist of his claim is that he was terminated for stating he would not execute the documents 'if there was a breach of the [Advanced Pricing Agreement] and improper adjusting entries were included in the accounting figures'").

Here, the court determines that Gauthier has not created a triable material fact issue as to the first element—that Goodyear required him to commit an illegal act which carries criminal penalties. Gauthier avers that Goodyear terminated his employment because he refused to alter a timeline he compiled covering the events that occurred on June 12, 2021. In his deposition, however, Gauthier fails to provide any evidence that he was directed to commit an illegal act by falsifying his timeline of events to aid Goodyear in avoiding an administrative penalty.

Gauthier testified that no one other than Bevil asked him to change his written statement. Gauthier stated that during his interview with Bevil, they "went over [his] written statement.

[Bevil] told [Gauthier] there were some differences here and there." Gauthier further stated that Bevil told him "that some of the times were off" and "that things didn't match up with the time frame." Gauthier then stated that Bevil asked him "if [he] wanted to change [his] statement. . . . Or if [he] would change [his] statement."

Gauthier did not suggest that Bevil clarified what discrepancies she believed existed with his written statement.[2] Nor does Gauthier assert or provide any evidence that Bevil specified a particular change she wanted him to make or otherwise suggested that Goodyear was attempting to avoid administrative penalties for failing to report the leak timely to the TCEQ. In fact, during his deposition, Gauthier was asked, "Were you told why you should change your statement?" Gauthier answered, "No. I was told that things didn't match up with the time frame, would you be willing to change your statement." In his deposition, Gauthier was also asked, "No one at Goodyear told you that they wanted to backdate your statement to avoid a TCEQ fine, correct?" Gauthier responded, "No one told me." Gauthier stated that when he declined to change his timeline, Bevil "just moved on." This accords with Bevil's recounting of the interview:

> I also informed Mr. Gauthier during the meeting that there were discrepancies with his timeline. I asked Mr. Gauthier if he wanted to change his statement that would be a company record in order to reconcile any difference in the timeline. Mr. Gauthier declined to amend his statement. I did not force Mr. Gauthier to change his statement, nor did I otherwise tell Mr. Gauthier that his employment was contingent upon doing so or that his refusal to amend the statement would result in any adverse employment action.

---

[2] In her declaration, Bevil indicated that one of the discrepancies was whether the SSM, Garcia, was notified timely of the leak. In addition, Bevil states that it appeared that Gauthier "entered work orders after the release was discovered, in an apparent effort to cover up the fact that he ignored the alarms and create the impression that he did so because they were faulty." As noted earlier, Bevil further averred that Gauthier's "written statement did not appear to be accurate and did not match up with the physical evidence of the work orders or Mr. Cooper and Mr. Bergeron's statements."

12

In fact, according to Gauthier, it was not until after his interview with Bevil that he suspected that he was being asked to do something illegal.[3] *Cf. Johnston v. Del Mar Distrib. Co.*, 776 S.W.2d 768, 771 (Tex. App.—Corpus Christi 1989, writ denied) ("It is implicit that in order to refuse to do an illegal act, an employee must either know or suspect that the requested act is illegal."). During his deposition, Gauthier stated that: "At the moment that I refused to change my statement, it wasn't because I thought they were asking it illegally. It's because I did not feel there was any reason to change my statement because what I had written was factual . . . ."

Gauthier cites to *Higginbotham v. Allwaste, Inc*. to support his contention that there exists a genuine dispute of material fact as to whether Goodyear requested him to engage in illegal conduct. 889 S.W.2d 411 (Tex. App.—Houston [14th Dist.] 1994, writ denied). In *Higginbotham*, the plaintiff claimed that his employer terminated his employment because he refused to follow his employer's directive to hide material overstatements of profits from the company's internal auditor and refused to be a party to the reporting of any additional material overstatements. *Id.* at 412. Specifically, the plaintiff claimed that he was expressly instructed to prepare schedules and rehearse answers to questions that would conceal information from the employer's internal auditor who had the responsibility of preparing the financial reports to be filed with the Securities and Exchange Commission ("SEC"). *Id.* The resultant conduct could eventually culminate in misleading reports being filed with that federal agency. *Id.* The Texas appellate court held that an employer need not "directly confront an employee and make an

---

[3] In his response, Gauthier contends that because he testified that he "felt like [he] was asked to change [his] statement so that [Goodyear] could backdate it and get out of the fine," there exists a fact issue as to whether Goodyear was requiring Gauthier to falsify a statement to cover up a regulatory violation. This misconstrues Gauthier's testimony. Gauthier testified that it was not until *after* he was interviewed by Bevil, he learned that the TCEQ was going to fine Goodyear.

affirmative statement that the employee will be terminated if he refuses to perform an illegal act," in order to support a Sabine Pilot cause of action. *Id.* at 413. Rather, "when an employer asks an employee to perform some act which is illegal, he automatically puts the employee to the 'unacceptable' choice of risking criminal liability or being discharged because the employee is placed under the onus of being terminated for insubordination." *Id.*

Here, however, Gauthier fails to provide any evidence that Goodyear asked him to alter his statement in a manner that would constitute an illegal act. The case at hand is distinguishable from *Higginbotham* where the plaintiff states that "he was expressly instructed to prepare condensed schedules which would hide adjustments that were taken on a contract by [his employer] in the third quarter," and "[h]e averred he spent three months and over 100 hours rehearsing answers to questions with [one of his managers]." *Id.* at 415. In contrast, in this instance, Goodyear did not direct Gauthier to do anything. Goodyear did not expressly tell Gauthier to forward or backdate his timeline of events. Goodyear did not ask Gauthier to provide other false information or to conceal the leak. Rather, Gauthier was asked if he would be willing to change his statement, and when he declined, Bevil "moved on." Asking Gauthier if he was willing to change his statement, without any further indication of how or why, does not amount to directing him to commit an illegal act.

In addition, the court observes that according to Gauthier, Bevil interviewed him on Tuesday, June 15, 2021, in the afternoon, which is *after* Goodyear submitted a report to the TCEQ at 8:30 a.m. that morning stating that on Saturday, June 12, 2021, a hydrocarbon leak started at 4:40 a.m. and was identified at 12:35 p.m. Thus, Gauthier's contention that Goodyear asked him to change his written statement in an effort to "get out of the fine" for failing to report the leak

14

in a timely manner is without rational basis. Drawing all justifiable inferences and resolving all reasonable doubts resolved in Gauthier's favor, any effort to "cover up a regulatory violation" would need to have occurred *before* Goodyear reported the violation to the TCEQ. Specifically, in order to avoid the administrative penalty for failing to report the leak timely, Goodyear would have to convince Gauthier and his coworkers, including Cooper, Bergeron, and the I&E technician, to *forward* date the time of the leak, not backdate the time of the leak, as stated by Gauthier.[4] Moreover, Goodyear would need to alter the physical evidence and documents, such as all the time stamps recording when the alarm went off, the time of the leak, and the work orders entered. In order to avoid the administrative penalty, these actions would need to have occurred less than 24 hours prior to Goodyear's initial report to the TCEQ, which is dated Tuesday, June 15, 2021, 8:30 a.m.

Moreover, Gauthier has not established that changing his statement would constitute an illegal act. Gauthier alleges that, had he changed his written statement, he would have committed the following criminal acts: tampering with a witness (TEX. PENAL CODE § 36.05); making a false statement to law enforcement; making false statements under oath (TEX. PENAL CODE § 37.02); and altering evidence in an ongoing investigation (TEX. PENAL CODE § 37.09).

A witness or prospective witness in an official proceeding commits an offense if he knowingly solicits, accepts, or agrees to accept any benefit on the representation or understanding that he will: (1) testify falsely; (2) withhold any testimony, information, document, or thing; (3) elude legal process summoning him to testify or supply evidence; (4) absent himself from an official proceeding to which he has been legally summoned; or (5) abstain from, discontinue, or

---

[4] Backdating the time of the leak would only make the report more untimely.

delay the prosecution of another. TEX. PENAL CODE § 36.05. An official proceeding is "any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant." TEX. PENAL CODE § 1.07(a)(33). According to Gauthier, it was Goodyear's standard practice following an incident like the hydrocarbon leak to ask employees to provide a written statement to the Human Resources Department. Gauthier further agreed that the written statement was an internal company statement. Goodyear's internal investigation does not constitute an "official proceeding," under the Texas Penal Code. Furthermore, even if it were deemed an official proceeding, there is no evidence, as already stated, that Goodyear asked Gauthier to provide false information.

Gauthier also generally contends that Goodyear asked him to make a false statement to law enforcement. Gauthier's written statement, however, was provided to Goodyear's Human Resources Department, not law enforcement. During his deposition, Gauthier was asked, "Which law enforcement agency did Goodyear ask you to make a statement to?" Gauthier responded, "It was not a law enforcement agency. It was the written statement to HR . . . ." By his own admission, Goodyear did not ask Gauthier to provide a false statement to law enforcement. Again, there is no evidence that Goodyear asked Gauthier to make a false statement.

Under Texas Penal Code § 37.02, "[a] person commits an offense if, with intent to deceive and with knowledge of the statement's meaning: (1) he makes a false statement under oath . . . ; or (2) he makes a false unsworn declaration under Chapter 132, Civil Practice and Remedies Code." TEX. PENAL CODE § 37.02. Chapter 132 generally requires that an unsworn declaration be in writing and "subscribed by the person making the declaration as true under penalty of perjury." TEX. CIV. PRAC. & REM. CODE § 132.001(c). Here, neither Gauthier's written

16

statement nor his statements to Bevil were made under oath or were part of an unsworn declaration made under penalty of perjury. There is also no evidence that Gauthier was asked to make a false statement. Accordingly, § 37.02 of the Texas Penal Code is inapplicable to the case at bar.

Finally, Gauthier contends that he was asked to violate Texas Penal Code § 37.09. A person commits the offense of Tampering With or Fabricating Physical Evidence under Texas law if, he knows that "an investigation or official proceeding is pending or in progress," and he:

> (1) alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding; or
>
> (2) makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding.

TEX. PENAL CODE § 37.09. While the court agrees that "[f]alsifying statements to evade regulatory enforcement can constitute a criminal act," here, as already pointed out, Gauthier was asked as part of Goodyear's internal investigation by its Human Resource Department if he would be willing to change his statement. There is no evidence in the record to support the claim that he was asked to provide a false statement.

Because Gauthier has not demonstrated the existence of a genuine issue for trial as to the first element—that Goodyear required him to commit an illegal act which carries criminal penalties—summary judgment is warranted.

17

III.  Conclusion

Accordingly, Goodyear's Motion for Summary Judgment (#40) is GRANTED. Gauthier fails to present a claim that warrants relief. There remain no material facts in dispute, and Goodyear is entitled to judgment as a matter of law.

SIGNED at Beaumont, Texas, this 18th day of December, 2024.

*Marcia A. Crone*

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE